UNITED STATES of America,
Appellee,

v.

Marion WHITE, Appellant.

No. 137, Docket 27972.

United States Court of Appeals
Second Circuit.

Argued Oct. 10, 1963.

Decided Nov. 20, 1963.

Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, New York City (William J. Quinlan and Andrew T. McEvoy, Jr., Asst. U. S. Attys., of counsel), for appellee.

Theodore Krieger, New York City (assigned by the court), for defendant-appellant.

Before CLARK, MOORE and KAUFMAN, Circuit Judges.

MOORE, Circuit Judge.

Appellant Marion White appeals from his conviction, after a jury trial, for violating the federal narcotics law, 21 U.S.C. §§ 173, 174. Appellant did not deny that the single unlawful transaction for which he was tried took place, but relied on the

defense of entrapment. On this appeal he contends that the refusal of the trial court to grant a continuance pending the availability of a "special employee" of the Government and the impropriety of the Government's summation constitute reversible error. The relevant facts can be briefly stated.

On August 13, 1958, Federal Narcotics Agents met with Roy Lynn, a "special employee" or informant, and at his suggestion went with him to the vicinity of 146th Street and St. Nicholas Avenue in New York City. Under the surveillance of the agents, Lynn left Agent Copland, who was then operating under cover, and walked down the block a short way where he encountered appellant. After a brief conversation, Lynn and appellant joined Agent Copland. Copland testified that he asked appellant if he could get some heroin, that appellant had replied in the affirmative but said that he would have to go downtown first. Copland, Lynn and appellant, followed by the other agents, then proceeded to 58 Hamilton Place. Appellant entered the building alone, emerged shortly, and gave Copland two glassine envelopes containing 92 grains of heroin. Copland, in turn, gave appellant $80.

Appellant's version of the August 13, 1958 transaction is somewhat different. He testified that when Lynn, whom he had known for some years, first approached him, Lynn asked if appellant would do him the favor of getting narcotics for himself and his friend (Agent Copland) because both were "sick"; that Lynn indicated, when appellant professed ignorance of where to go for this purpose, that the narcotics could be obtained from one Chisolm, with whom appellant frequently dealt in the course of his "policy" business; that Chisolm would not sell to Lynn but would sell to appellant; and that it was with reluctance and after some delay that appellant agreed. Appellant further testified that en route to 58 Hamilton Place Lynn gave him $40 which he gave to Chisolm and that he delivered the narcotics to Lynn. Two hours later, appellant refused Lynn's offer of $10 for doing the favor.

The Government kept appellant under "continuous investigation" until his arrest in January, 1960, but did not uncover any other transactions; and, after his arrest and prior to indictment, on November 17, 1961, appellant had agreed with the Government to cooperate in the initiation of other narcotic cases, but he had been singularly unsuccessful. Prior to and during appellant's trial, the Assistant United States Attorney offered to make Lynn available for use as a court or defense witness, but it was subsequently learned that Lynn had been beaten and was seriously ill. After the Government had rested and appellant had taken the stand in his own defense, a doctor who had examined Lynn at the court's direction testified in the absence of the jury that Lynn would not be able to appear for "a couple of weeks." Appellant thereupon moved for adjournment until such time as Lynn could testify. The motion was denied and appellant, after going through the formality of calling in open court for the indisposed Lynn, rested. The trial court gave both parties permission to refer to Lynn's absence in summation.

In this case the problems frequently presented in narcotics cases where special employees are involved were resolved in the early stages. The Supreme Court's admonition in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) that the Government need only identfy its informant, was satisfied since appellant knew that Lynn, his friend for a number of years, was the special employee. Unlike United States v. Cimino, 321 F.2d 509 (2d Cir. 1963), the whereabouts of Lynn at the time of trial was not unknown. Moreover, rather than objecting to his production, the Government had repeatedly offered to make Lynn available.

Cases in this circuit and others have made it abundantly clear that the

Government is not the guarantor of a special employee's appearance at trial. E. g. United States v. Holiday, 319 F.2d 775 (2d Cir. 1963); United States v. Cimino, supra; Williams v. United States, 273 F.2d 781 (9th Cir. 1959), cert. denied, 362 U.S. 951, 80 S.Ct. 862, 4 L.Ed.2d 868 (1960); Eberhart v. United States, 262 F.2d 421 (9th Cir. 1958). However, defendants should be afforded every reasonable opportunity to present their cases as fully as possible. Thus, this Court has approved of the method sought to be used by appellant here. United States v. Glaze, 313 F.2d 757 (2d. Cir. 1963), citing Sartain v. United States, 303 F.2d 859 (9th Cir.), cert. denied, 371 U.S. 894, 83 S.Ct. 194, 9 L.Ed.2d 127 (1962). The issue, therefore, is whether the trial court abused its discretion in refusing to grant an adjournment where the appearance of the witness would be delayed, not whether the principles of Roviaro were disregarded.

We fully realize that a special employee's role in the apprehension of narcotics violators is such that normally he would not be expected to come to the rescue of one whose arrest he has initiated. Nevertheless, appellant might have developed something from Lynn which could have tipped the scales in his favor. A significant aspect of appellant's defense was his claimed ignorance of a potential supplier and his reluctance in agreeing to engage in the transaction. The truth of these assertions depended on what transpired when appellant and Lynn first met and conversed outside Copland's hearing. There was no other way for appellant to substantiate his defense. Thus, the testimony sought to be adduced would not have been merely cumulative and would done more than impeach the Government witnesses.

■ An adjournment would not have been an unduly burdensome hiatus in the trial, since the witnesses were few and the factual issues clearly defined. Moreover, appellant's counsel had not been dilatory in locating Lynn or in mak-

ing it clear to the court and the prosecution that he intended to rely heavily upon his testimony. Cf. United States v. Lyons, 256 F.2d 749 (2d Cir.), cert. denied, 358 U.S. 911, 79 S.Ct. 240, 3 L.Ed.2d 232 (1958). Discretion in granting continuances rests with the trial judge. United States v. Cimino, supra. However, each case depends upon its particular facts. Here appellant had actual possession of the narcotics, he made delivery, and he received the money. All necessary elements of the crime under the statute had been established. Entrapment, if he could prove it, was his only hope. Lynn's participation in the transaction has been so described by the narcotics agents as to make him a material witness on this phase of the case.

■ Under all the circumstances presented here, we hold that the trial court erred in denying appellant's motion to adjourn for a reasonable time so that Lynn's testimony could have been presented. This opinion does not mean that on a new trial the Government is under any duty to produce Lynn or that the trial may not proceed without Lynn if he should be unavailable.

■■ Since a new trial will be necessary, only brief comment need be made concerning the allegedly prejudicial remarks by the prosecutor in summation. If Lynn appears and testifies, there will be no occasion to comment on his absence. When characterizing the quality of the testimony of a witness, counsel for prosecution and defense should be ever mindful of Canon 15 of the Canons of Professional Ethics which declares that it is improper for a lawyer to assert in argument his personal belief in the justice of his cause. Although the prosecutor did not use the personal pronoun "I," nevertheless he was in effect vouching for the reliability of the Government's witnesses and for this purpose personified the "Government." In addition, he definitely conveyed the impression that the Government had not called the informer because "They [special em-

ployee addicts] are not the most reliable kind of witness when the Government puts them on the stand." This negative approach he quickly contrasted with the affirmative by saying, in substance, that the Government called reliable witnesses who would not testify falsely or change their stories. These comments were quite unwarranted, particularly since illness was the cause of Lynn's non-appearance.

Reversed and remanded.

We wish to express the court's appreciation to Theodore Krieger, court-assigned counsel, for his capable representation of the defendant in this appeal.