294 F.Supp. 207 (1968)
James Corbett CHURDER, Plaintiff,
v.
UNITED STATES of America, Defendant.
No. 68 C 454(1).
United States District Court E. D. Missouri, E. D.
December 3, 1968.
*208 James Corbett Churder, pro se.
Veryl L. Riddle, U. S. Atty., Irvin L. Ruzicka, Asst. U. S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM OPINION AND ORDER
HARPER, Chief Judge.
The plaintiff in this case was convicted by a jury of a violation of 18 U.S.C.A. § 641 on January 10, 1968, Case Number 66Cr 217(1). Appeal was taken, and this conviction was affirmed by the Eighth Circuit, Churder v. United States, 387 F.2d 825 (1968). Now plaintiff seeks post-conviction relief under 28 U.S.C.A. § 2255. The facts in this case are quite fully re-reported in 387 F.2d and the court will not reiterate them.
*209 Section 2255 provides:
"A prisoner in custody under the sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, * * * or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
"A motion for such relief may be made at any time.
"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, * * *."
The initial purpose of this section was to alleviate some of the more difficult problems in the administration of federal habeas corpus jurisdiction. Since the motion is required to be filed with the sentencing court the section often has as its by-product the additional convenience embodied in the fact that the presiding trial judge will hear and determine the motion. This factor is particularly beneficial to the effective and adequate administration of justice in our system, for it provides a most sensible means whereby the often frivolous claims of the incarcerated can be sorted from those of substance. As with all sound means for the preservation of individual liberties and rights, this section has been and is constantly being abused by those convicted criminals without scruples. A general reading of the reported cases under this section reveals that a great many courts find that often it is the trip to the sentencing court which motivates the motion and not a real deprivation of one's rights. Such reading also confirms what experience teaches: That often one in a federal institution will swear to almost anything in an effort to cause his removal from the penitentiary. It is indeed amazing to discover how well memories are revived and events recalled with great particularity when one is incarcerated.
Section 2255 does not grant an absolute right to an evidentiary hearing on a motion. See, Taylor v. United States, 282 F.2d 16, 20 (8th Cir. 1960); United States v. Hill, 319 F.2d 653 (6th Cir. 1965); Sanders v. United States, 373 U.S. 1, 21, 83 S.Ct. 1068, 1080, 10 L.Ed.2d 148 (1963); and Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).
As noted by the Supreme Court in Sanders, supra:
"* * * we think it clear that the sentencing court has discretion to ascertain whether the claim is substantial before granting a full evidentiary hearing."
Earlier in the Machibroda, supra, decision that court stated:
"The language of the statute does not strip the district courts of all discretion to exercise their common sense. Indeed, the statute itself recognizes that there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner."
The language of the section requires a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief * * *." In making such a determination the above quoted language from Sanders and Machibroda must be considered. Clearly, no hearing is required where the motion raises a question of law only or where the motion fails to raise a substantial issue as to the basic fairness of the original trial. Castaldi v. United States, 251 F.Supp. 681 (E.D.Mo.1966), aff'd 368 F.2d 185 (8th Cir. 1966); Machibroda v. United States, supra.
The same is true for instance where there is no dispute as to the facts, or if the conclusions urged are not supported by allegations of fact having some basis in fact and some believability. Mitchell v. United States, 104 U.S.App.D.C. 57, 259 F.2d 787, cert. denied 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86; Wilkerson v. *210 United States, 342 F.2d 807 (E.D.Mo. Nov. 11, 1965). In the final analysis, the governing principle of decision was stated by the Supreme Court in Sanders, supra, wherein that court quoted from Salinger v. Loisel, 265 U.S. 224, 231, 44 S.Ct. 519, 521, 68 L.Ed. 989:
"* * * each application is to be disposed of in the exercise of sound judicial discretion guided and controlled by a consideration of whatever has a rational bearing on the propriety of the discharge sought. * * *"
A most careful and thoughtful inquiry into the whole record (including the transcript of the trial) and the materials having a rational bearing on this application reveal that complainant's motion is without merit and presents no substantial claim. Those factual allegations which withstand an initial test of veracity do not present such a fundamental miscarriage of justice as would justify relief by collateral attack.
Borrowing from Judge Blackmun, Churder v. United States, 387 F.2d 825, 829 (8th Cir. 1968) the court pauses to note: "This case, as do so many others, reeks of guilt and contrived excuse. But guilt or innocence, of course, is not among the issues before us. We pass on to those issues."
The plaintiff here has set forth ten grounds on which he bases his allegation that he was unlawfully incarcerated: (1) The government illegally used an electronic listening device to obtain evidence resulting in his conviction; (2) The jury was allowed to hear the evidence obtained by the illegal use of the walkie-talkie worn by the so-called reliable informant; (3) Violation of the right of confrontation by the failure to reveal the name of the informer; (4) Denial of a fair trial by not revealing the Section 3500 statements of the informer; (5) Error in that the court failed to direct remarks to the defendant or the record as to why the probation office need not turn in or make a presentence investigation; (6) Improper representation by trial counsel; (7) Improper representation by appellate counsel; (8) The prosecutor and postal agent's action and discussion before members of the jury relating to certain photographic slides; (9) Separation of the jury in a prejudicial manner; and (10) Conduct of the prosecutor and postal agent Thorn at counsel table during trial. Each of these contentions will be considered in order.
Points (1) and (2): In support of his stated bases plaintiff states that on November 20, 1966, the government illegally used a walkie-talkie, worn by the informer. According to the plaintiff, that informer engaged the plaintiff in conversation leading to incriminating statements. This information was that the plaintiff had in the trunk of his car the stolen money orders, stamps and related equipment. The record here reveals that on December 23, 1966, a hearing was held on defendant's motion to suppress certain evidence seized from his automobile. That motion was overruled and the decision relating thereto affirmed by the Court of Appeals. At this hearing, Postal Inspector Thorn, on cross-examination by the government and redirect, revealed that the informer did have a walkie-talkie. Further, at page 10 of the transcript of that hearing, Inspector Thorn stated that he conversed with this informant by use of such radio. The record affirmatively reveals that the postal inspector, did not listen into any conversation the informer had with the plaintiff, but rather that after such conversation occurred he received by radio the information that plaintiff had the stolen matter in his automobile. Therefore, this is most definitely not the "uninvited ear" situation as in the Katz case, Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, cited by the plaintiff. Plaintiff's fourth amendment rights were not violated in any way, shape or form because the informer had in his possession a walkie-talkie. That radio device was used solely for the purpose of communicating with the informant. No one utilized it to eavesdrop on the conversation plaintiff had with this informant. The situation was just as if, instead of radio, the informant had *211 utilized a public telephone to contact Postal Inspector Thorn.
Further, the jury certainly did not hear any evidence obtained by the use of the walkie-talkie. There was no jury on December 23, 1966 (contrary to plaintiff's statement), and the trial transcript reveals that at no time was the informant nor the information passed on by him, brought to the attention of the jury. Of course, the stolen items were presented to the jury and the informant passed on the information which led to plaintiff's arrest with those items in his possession. However, the legality and admissibility of that evidence has heretofore been determined by this court and the Court of Appeals. It is sufficient to say that the record conclusively demonstrates that plaintiff's claims in regard to the use of the walkie-talkie are totally without merit.
Point (3): This point relates to plaintiff's right of confrontation vis-a-vis the informer. In relating the facts on which this point is based, plaintiff also claims that Agent Thorn implied that he had the informant's consent to listen in on the conversation between informant and plaintiff, and further that the court permitted the postal inspectors to testify about the information received by the walkie-talkie, and lastly, that the court allowed the government hearsay liberties. Plaintiff then (page 4 of the motion) quotes two sentences from two different proceedings. As to the identity of the informer and plaintiff's right to confrontation, the matter has already been disposed of by this court and again by the Court of Appeals. Churder v. United States, 387 F.2d at 831. This present motion raises no point not heretofore considered by either court. A Section 2255 motion is not a second appeal. Without the addition of new facts a matter once decided cannot be again raised in a different guise. None of plaintiff's rights were violated by the ruling of the two courts allowing this informer's identity to remain concealed. The court would point out that at this time the burglaries of the post offices had not been solved and there is the distinct possibility that revelation would have substantially hindered the investigation of those thefts. See generally, McCray v. Illinois, 386 U.S. 300, 309-12, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967) and Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).
As already noted, the only mention of the informant and the radio communication was at the hearing on the motion to suppress on December 23, 1966. The transcript reveals that no serious hearsay liberties were allowed. Furthermore, the record affirmatively reveals that Inspector Thorn did not listen to any conversation on the walkie-talkie but rather only conversed with the informant after the informant's private conversation with plaintiff. It is, therefore, conclusively clear from the record in this case that these points and the facts that support them do not raise any substantial issue going to the fundamental fairness of the trial; and further, that the record reveals that none of plaintiff's rights were in any way violated in these respects. Point (3) is patently without merit.
Point (4): Here plaintiff is concerned with Section 3500 statements (Title 18) and the grand jury minutes. Plaintiff states his complaint in terms of "the court erred." Thus plaintiff reveals that he misreads 18 U.S.C.A. § 3500(b). That section is authority for the court to grant defendant's motion to see statements of certain government witnesses after they have testified on direct examination. Of course, the purpose of this section is to give the defendant the benefit of discovering possible inconsistencies and thereby providing him with the means to impeach the witness. Here, the record reveals that the defendant did not seek these statements, if any existed. Such a position was logical, in that the defendant and his attorney had already heard all the evidence which the postal inspectors had at their disposal at the hearing on the motion to suppress. No inconsistencies exist between that hearing and the trial and, therefore, there would have been no need for such statements. *212 Since neither of the informants involved in this case were called as witnesses, their statements to the government never became discoverable under Rule 16 and Section 3500.
As to the grand jury minutes, the court assumes that plaintiff means the transcribed testimony of the witnesses before the grand jury. Such testimony is seldom divulged. There exists a long established policy in the federal courts that the grand jury proceedings be kept secret. Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973. Only in rare instances will such testimony be revealed. Plaintiff has not stated any facts which could lead one to even speculate that his case was one of those rare ones in which the shroud of secrecy is allowed to be parted. Certainly, here again, no facts are stated which even give color to a claim of fundamental unfairness. The situation is such as to demonstrate that this claim is not sufficiently substantial to require a hearing, or relief.
Point (5): On page 3 of plaintiff's motion he alleges that the court failed to comment on why the probation office need not turn in or make a presentence report, and that such failure was error. On page 5 the contention is that the court had opportunity to speak on the presentence report, but failed to do so in violation of Rule 32(c). In his brief at page 13 plaintiff reverts to an allegation that this court had no presentence report and failed to state why one was not required pursuant to Rule 32(c).
It is sufficient to say that the court had the presentence report of the probation office on this plaintiff at the time of sentencing. The transcript of the sentencing proceedings held on January 20, 1968, reveals that the court had such a report (See Tr. pp. 140 and 144). Therefore, any allegations relating to a lack of such a report are false and without merit.
As to the allegation on page 5 of plaintiff's motion relating to failure to comment on that report, such contention is without substance and certainly does not warrant a hearing. Rule 32(c) (2) does not in any way require the sentencing judge to comment on the report. The rule does allow the court to disclose the report to the defendant. Such disclosure is discretionary. Failure to disclose or comment does not deny a defendant due process. Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) and Williams v. Oklahoma, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959). Thus, not only was Rule 32 not violated, but also the procedure utilized by the court did not violate any of plaintiff's rights. Thus, the sentence was in no way illegally or unlawfully imposed.
Point (6): This is the all too often heard cry of "ineffective representation" of counsel. Ever since the opinion was handed down in Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), in which the Supreme Court twice utilized the word "effective", this allegation has harassed trial counsel, hired and appointed. The Constitution requires only "assistance". Cases discussing the problems and ramifications of this battle cry are legion; to merely list them would be a near impossible task.
However, the applicable principle has been recently stated by the Eighth Circuit Cardarella v. United States, 375 F.2d 222, 230 (1967):
"The rule applicable is that a charge of inadequate representation can prevail `only if it can be said that what was or was not done by the defendant's attorney for his client made the proceedings a farce and a mockery of justice, shocking to the conscience of the court.' O'Malley v. United States, 6 Cir., 285 F.2d 733, 734 (1961)."
The Eighth Circuit stated the applicable standard in a slightly different manner in Taylor v. United States, supra, at 20:
"The Sixth Amendment does not require for its satisfaction that the actions of counsel result in a favorable outcome. Rather, its requirement is met whenever the accused is supplied *213 counsel who exercises that judgment which might be expected of one trained in the law and committed to the diligent application of its principles. Mitchell v. United States, D.C.App. 1958, 104 U.S.App.D.C. 57, 259 F.2d 787, certiorari denied 1958, 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86."
See also, Pelley v. United States, 214 F. 2d 597 (7th Cir. 1954), cert. denied, 348 U.S. 915, 75 S.Ct. 296, 99 L.Ed. 718, and Trumblay v. United States, 256 F.2d 615 (7th Cir. 1958), cert. denied 358 U.S. 947, 79 S.Ct. 355, 3 L.Ed.2d 353, wherein the Court of Appeals made note of the fact that the movant chose his own attorney.
It must be further pointed out that the court, in applying these principles to the allegations of plaintiff, must take care lest the court substitute its judgment for that of defense counsel. As pointed out by the Mitchell case, supra, at 793: "The accused is entitled to the trial judgment of his counsel, not the tactical opinions of the judge."
The allegations of plaintiff in regard to this point appear on page 5 of his motion. There plaintiff alleges that trial counsel failed and refused to call the only corroborating witness. Plaintiff states that such witness, now alleged to be deceased, would have fully substantiated plaintiff's story. A more complete statement of his allegation appears at page 14. The court will discuss only the allegation relating to the failure to call the corroborating witness. It is sufficient to say as to the remainder of the allegations, that this judge was the presiding judge at the trial of this cause, and that the attorney for defendant did an excellent job of representing defendant (the plaintiff here). None of these other allegations are sufficient to support a claim on which a hearing should be required. Applying them to the tests heretofore set out, it is clear that the record and relevant material, including the observation of counsel's conduct at trial, conclusively show that plaintiff is not entitled to relief. See, United States v. Holiday, 319 F.2d 775, 776 (2nd Cir. 1963). A hearing would serve no useful purpose. Accepting these other allegations as true, they would not as a matter of law constitute a failure of plaintiff's counsel to provide him with an adequate and fair trial. O'Malley v. United States, supra, at 734; Cardarella v. United States, supra, at 230. See also Popeko v. United States, 294 F.2d 168 (5th Cir. 1961), l. c. 171, 8 and the first paragraph 9.
In regard to the uncalled witness plaintiff has cited Johnson v. United States, 71 U.S.App.D.C. 400, 110 F.2d 562 (1940). That decision, an appeal, related to a newly located witness and is not applicable here. Plaintiff also cited this court to Bolden v. United States, 105 U.S. App.D.C. 259, 266 F.2d 460 (1959). From this case, also an appeal, the court quotes:
"We do not know why trial counsel did not subpoena Magriver * * *. Whatever the reason for it, the decision was for the judgment of counsel and should not now be the basis for a charge of inefficiency." Citing Mitchell v. United States, supra.
In Mitchell v. United States, supra, at 794, the court stated: "If a movant under Section 2255 makes no allegations of ineffectiveness or incompetence of counsel save in matter normally within the realm of counsel's judgment, he is not entitled to a hearing." Earlier, at page 792, that court also enumerated certain items which are normally within the realm of judgment and such list includes advice as to a defendant taking the stand and the decision as to the calling of a witness.
This court, and no other court, can put itself in the position of second-guessing counsel. This is even more true where that attorney is one chosen by the defendant and well known to the court as an experienced and able attorney with ample trial experience in criminal matters. The plaintiff here does go one step further and impliedly alleges that trial counsel refused to call the witness because they were lifelong friends. The court first believes that the friendship *214 implication is a conclusion, not supported by any facts. Second, the court does not believe the plaintiff. Third, even if the court were to accept the fact that trial counsel and the corroborating witness were lifelong friends, the court cannot find in the record or in plaintiff's motion any support for a finding that such friendship adversely influenced plaintiff's defense. Defense counsel utilized the fact that the government failed to call this witness in rebuttal very effectively. Plaintiff was simply not prejudiced by this act of judgment. The court will not tamper with that judgment. Plaintiff's claim, therefore, with respect to ineffective assistance of counsel is on the record insubstantial. A hearing would serve no useful purpose.
Point (7): This point concerns ineffective representation by counsel on appeal. It is sufficient to say that this contention is frivolous. In the Cardarella case, supra, at 230, the Eighth Circuit stated:
"However, counsel is under no duty to brief every assignment of error made in a motion for new trial particularly where, as here, there is no prejudice in fact, and counsel's own experience and the precedents in this circuit indicate the point would not be sustained, and there are other assignments of error which counsel believes to be more meritorious."
The court has availed itself of plaintiff's appellate counsel's brief on appeal, and has, of course, studied the reported appellate decision. It is amply apparent that counsel on appeal urged the proper points and with great vigor and skill. What he chose to brief and argue are matters of judgment. This court will not substitute its judgment. It is conclusive that this point is totally without merit. Plaintiff was more than fairly represented.
Point (8): This point relates to a rather amorphus claim that the prosecutor and Agent Thorn denied the plaintiff due process and a fair trial by the display, handling and discussion of alleged photographic slides adverse to plaintiff. On page 6 of his motion plaintiff set forth his facts to support this allegation. At that point, he states that "before the trial began that day, before the prospective members of the jury (some of whom were subsequently seated on the trial jury), the prosecutor and postal agents were seen handling a screen * * *." Plaintiff continues to set forth an alleged conversation in which one agent related that they would use the slides which proved his guilt. Accepting this rather far-fetched allegation as fact does not entitle plaintiff to a hearing. The prejudice which could have followed this did not follow. First, this event, as stated, took place before the impaneling of the jury. Hence, plaintiff was fully protected by the examination of the jury on voir dire and by this court's general charge to the jury before selection. Second, plaintiff does not allege that any member of the jury panel heard these comments. Third, the record reveals that these alleged slides were not used at the trial of this cause. Therefore, such conversation, if heard by a juror, would not have been detrimental to plaintiff, but rather would have worked in his favor by casting a haze on the veracity of the postal agents involved. Plaintiff's claim, if accepted, does not raise a substantial issue as to a violation of any right; he was fully protected by voir dire.
Point (9): Here plaintiff claims that the jury was allowed to separate in a manner prejudicial to the plaintiff. Plaintiff cites Remmer v. United States, 347 U.S. 227, 74 S.Ct. 450, 98 L. Ed. 654, a case involving a potential attempt to tamper with a criminal jury. In dictum in that case the court stated that any private communication with a juror about a matter pending before the jury is presumptively prejudicial. Having found and stated this case, plaintiff seeks to place himself within it. As the court reads plaintiff's motion, plaintiff is not concerned with the impounding of the jury. Of course, the decision as to confining the jury is within the sound *215 discretion of the trial judge. Cardarella v. United States, supra, at 228. At all recesses, the jury was duly admonished not to discuss or listen to a discussion of the matter.
Nevertheless, plaintiff relates three occasions during which members of the jury are alleged to have violated the admonition. First plaintiff states that in the corridor immediately outside the court room, two jurors were so positioned that they could listen to remarks of the prosecutor discussing the case. No allegation is made that they did listen or hear any discussion. Further, plaintiff states that he observed this in the company of his attorney. This latter statement makes this claim very difficult to believe. Certainly, even the most inexperienced attorney would have made some effort to have a mistrial declared if the facts were as plaintiff alleges. Second, plaintiff states that he heard a male juror state to a postal agent, "* * * guess we'll be done today," with the reply, "Well, you could be * * *." This conversation itself rebuts the presumption which may be raised by the Remmer decision. Such an exchange is rather clearly harmless in the sense of creating a prejudice, although it would also rather clearly violate the court's admonition.
The third event complained of is that the plaintiff in the company of his wife and his attorney saw the prosecutor, postal agents and witnesses standing in the corridor with two or three members of the jury in close proximity. Agent Johnson was alleged to have asked, "Are you putting me on first?" The prosecutor nodded in reply and made some remarks plaintiff failed to hear clearly. Plaintiff apparently wishes to impress the court with implications of what might have been said. He has failed to do so.
There is a strong presumption that members of the jury having taken their oath, will conform to the instructions of the court. In order to overcome this presumption the plaintiff must establish more than a mere possibility of sinister goings on. This is particularly true where, as here, plaintiff failed to call these incidents to the court's attention during the trial; and where two of them allegedly occurred in the presence of counsel for plaintiff without any action or comment by him; and where plaintiff had knowledge of these facts so as to have been able to raise them in the motion for new trial and on appeal. Since these alleged events occurred in plaintiff's presence, he cannot and does not claim that the facts he states are based on recently acquired knowledge. In that situation, the motion for new trial and the appeal were the proper forums for their presentation. Plaintiff has not alleged that counsel was negligent in failing to submit these matters. It is thus, the opinion of this court these incidents were patently contrived by the plaintiff. They do not withstand an initial inquiry into veracity. But even, if they are accepted, plaintiff has not shown sufficient facts to warrant a hearing. His facts reveal that this claim is not substantial. Further, as stated by the Eighth Circuit: "We have repeatedly held that alleged errors which were not preserved for review or which might properly have been but were not raised on appeal are not cognizable upon collateral attack in a § 2255 proceeding." Cardarella v. United States, supra, at 231.
Point (10): Here plaintiff alleges that the conduct of the prosecutor and Agent Thorn at counsel table during trial denied defendant a fair trial. This contention, accepting the facts as stated, is so frivolous as to defy comment. It is more than sufficient to say that this judge presided over the trial and observed this normal conduct and that it in no way deprived plaintiff of a fair and impartial trial. The allegation is both insubstantial and without merit in the law.
Having fully considered each separate allegation made by plaintiff, the court finds that plaintiff is not entitled to the relief sought. Therefore, the clerk will enter the proper order overruling in all particulars plaintiff's motion.